Filed 1/18/22  In re T.P. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re T.P., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>T.R.,<br><br>        Defendant and Appellant. | A163149<br><br>(San Francisco City & County Super. Ct. No. JD18-3279) |

Appellant T.R. (Mother) appeals from the order terminating her parental rights to her three-year-old son, T.P.  She argues that the juvenile court failed to properly weigh whether the parental-benefit exception to termination applied.  We disagree and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Respondent San Francisco Human Services Agency (the Agency) received a report in late November 2018, when T.P. was an infant, that his father punched Mother and tried to choke her, which caused T.P. to hit his head on a wall.  The Agency initiated these proceedings the next month when it filed a dependency petition under Welfare and Institutions Code

1

section 300.[1]  T.P. was placed with a longtime family friend, and soon after with an adult half sibling.  Further investigation by the Agency revealed that Mother had a history of methamphetamine use and that she had been arrested for drug crimes, and she and T.P.'s father had a history of domestic violence.  The parents were "homeless and couch surfing."  They had both suffered child abuse when they were children, and a social worker stated it was "evident that [the parents] have unresolved trauma and substance abuse issues for which they need assessment and treatment."

The juvenile court, in February 2019, sustained allegations that Mother and T.P.'s father had engaged in domestic violence and that they both had mental health issues that required assessment and treatment (§ 300, subd. (b) [failure to protect]), and that three older half siblings had been the subject of dependency proceedings and placed in out-of-home care (§ 300, subd. (j) [abuse of sibling]).  The court adjudged T.P. a dependent minor, continued him in out-of-home care, and ordered reunification services for both parents.  Mother was to have visits with T.P. supervised by the Agency.

Mother engaged in services and made progress in her case plan.[2]  The juvenile court continued her reunification services at the six-month review hearing in October 2019, and continued T.P. as a dependent minor.

T.P. was placed with a different foster placement when he was around a year old.  Mother engaged in her case plan and continued to make progress. The Agency, in February 2020, recommended that Mother be granted another

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] T.P.'s father, by contrast, did not meaningfully engage in services or make progress in his case plan.  The juvenile court discontinued his reunification services following the six-month review hearing and terminated his parental rights at the same time it terminated Mother's parental rights. He is not a party to this appeal.

six months of reunification services with the hope that housing would become available so that she could reunify with T.P.  At the 12-month review hearing in February, the juvenile court continued T.P. as a dependent minor and ordered that reunification services continue for Mother.

The following month, Mother moved into her own housing, where she "maintained a safe and sober home free from violence."  After a brief delay caused by shutdowns initiated because of COVID-19, Mother began in-home, unsupervised visitation with T.P. in April 2020.  The Agency submitted a status report dated June 2020 recommending that T.P. be returned to Mother's care, with family-maintenance services to be provided.  The social worker reported that T.P. had "done especially well living in the care of [a] substitute care provider but for healthy attachment to take place for [T.P.] and [Mother] it is important that the transition begin for reunification to be successful and continue through the family maintenance phase."  The Agency planned to transition to weekend overnight visits, followed by a 30-day home visit, with the intention to return T.P. to Mother's care.  The juvenile court, in June 2020, granted the Agency discretion to begin overnight visits between T.P. and Mother.

Mother began a 30-day trial home visit with T.P. in July 2020.  The social worker observed Mother doing well in the first two weeks of the visit.  Then in late July, Mother tested positive for methamphetamine, but tested negative for methamphetamine three days later (though she did test positive for marijuana).  The Agency ended the home visit.  Concerned about Mother's drug use given T.P.'s young age, the Agency, in August, recommended terminating Mother's reunification services and finding a different permanent placement for T.P.  Mother's visits with T.P. changed to supervised.

3

Following a contested 18-month review hearing in December 2020, the juvenile court terminated Mother's reunification services and set the matter for a selection-and-implementation hearing (§ 366.26). Mother was to continue to receive supervised visits, and by April 2021, Mother was visiting with T.P. once a week. The visits went well, and T.P. had a positive relationship with Mother.

The Agency recommended that Mother's parental rights be terminated. As of April 2021, T.P. was placed with a foster family that was not interested in adoption. The Agency was trying to find a relative placement for T.P. but was ultimately unsuccessful, and T.P. was placed with a prospective adoptive home in July.

The juvenile court held the selection-and-implementation hearing five days after T.P. was placed in the new home, and the social worker testified about the placement. Mother's trial counsel briefly questioned the social worker, first about Mother's recent visits with T.P., and then about why the Agency stopped pursuing relative placement for T.P. The worker acknowledged that the visits had been appropriate and explained why relative placement had been unsuccessful.

Mother testified that she had kept her appointed visits with her son, she was currently clean and sober, she had a place to live, she objected to the termination of her parental rights, and she wanted T.P. placed with her. If that was not possible, she wanted T.P. placed with a family member.

After the close of evidence, Mother's counsel argued that Mother wanted her son returned to her and emphasized Mother's recent sobriety. The deputy city attorney stressed, though, that the focus of the case was currently on establishing permanence for T.P.

4

The juvenile court first observed that the law was "very specific" and "mandates and requires that judges follow it," even though judges may not "enjoy terminating parental rights even though the burden had been met." The court then ruled that "[t]he standard has been met here by clear and convincing evidence. This child is generally adoptable. This child is specifically adoptable. There are no exceptions that have been prevented—presented, I should say. And I am required to follow the law. [¶] And I will say that the Agency has bent over backwards in this case because normally, and in many other counties, . . . parental rights would have been terminated at the six-month timeline, not over two years later. I mean that's just what is happening in Solano County[3] and other counties. You know, that's not any—any real rationale that's going into my judgments here today. But having listened to all the evidence here today, I am going to follow the law." The court terminated Mother's parental rights.

## II.
## DISCUSSION

Mother's sole argument on appeal is that the juvenile court failed to follow the standards for considering whether the beneficial-relationship exception to termination of parental rights had been established under the standards set forth in *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*). We are not persuaded.

"At the section 366.26 hearing, the question before the court is decidedly not whether the parent may resume custody of the child." (*Caden C.*, *supra*, 11 Cal.5th at p. 630.) Instead, the goal is to select and implement a permanent plan for the child. (*Ibid.*) "[T]he court must first

---

[3] The court referred to Solano County because that is where a friend of the trial court had retired because "he really no longer liked having to follow the law that he was mandated to follow when the standards have been met."

determine by clear and convincing evidence whether the child is likely to be adopted. (See § 366.26, subd. (c)(1).) If so, and if the court finds that there has been a previous determination that reunification services be terminated, then the court shall terminate parental rights to allow for adoption. [Citation.] But if the parent shows that termination would be detrimental to the child for at least one specifically enumerated reason, the court should decline to terminate parental rights and select another permanent plan. (See § 366.26, subd. (c)(1)(B)(i)–(vi), (4)(A).)" (*Id.* at pp. 630–631.) One of those exceptions is the "parental-benefit exception. What it requires a parent to establish, by a preponderance of the evidence, is that the parent has regularly visited with the child, that the child would benefit from continuing the relationship, and that terminating the relationship would be detrimental to the child." (*Id.* at p. 629; see § 366.26, subd. (c)(1)(B)(i).)

The parties disagree whether Mother preserved an argument that the parental-benefit exception applies by failing to specifically raise it at the selection-and-implementation hearing. We assume for purposes of this appeal that by objecting to the termination of her parental rights and testifying about her visits and bond with T.P., Mother sufficiently preserved the issue. But we must reject her argument on the merits because there is no indication that the juvenile court failed to properly apply the law when considering whether the exception applied.

*Caden C.* stressed that "[a] parent's continued struggles with the issues leading to dependency are not a categorical bar to applying the [parental-benefit] exception." (*Caden C.*, *supra*, 11 Cal.5th at p. 637.) Although a parent's continued struggles may be relevant to whether a child would benefit from continuing a relationship and harmed by losing it, "[t]he parent's continuing difficulty with mental health or substance abuse may not be used

6

as a basis for determining the fate of the parental relationship by assigning blame, making moral judgments about the fitness of the parent, or rewarding or punishing a parent." (*Id.* at p. 638.) And a parent's struggles are not relevant insofar as they could affect a parent's ability to regain custody of a child, because return to the parent's custody is not an option at a selection-and-implementation hearing. (*Ibid.*)

Mother claims that the juvenile court improperly relied on her failure to reunify with T.P. despite having a long time to do so as a reason to terminate parental rights. Not so. The court's comments about the length of time Mother was provided to reunify was made in the context of its observations on how difficult the decision to terminate parental rights is. There was no serious dispute that Mother worked hard to try to reunify, that she loved T.P. and had a positive relationship with him, and that the decision to terminate parental rights was a difficult one. But the court nonetheless found that no exceptions to termination of parental rights existed.

We also reject Mother's brief argument that insufficient evidence supports the juvenile court's conclusions. We review factual determinations underlying the exception for substantial evidence. (*Caden C.*, *supra*, 11 Cal.5th at p. 640.) But "the ultimate decision—whether termination of parental rights would be detrimental to the child due to the child's relationship with his parent—is discretionary and properly reviewed for abuse of discretion." (*Ibid.*)

There apparently is no dispute that the first element of the parental-benefit exception, that Mother had regular visitation and contact with T.P., was met here. (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) But little evidence was presented on the second two elements, whether T.P. would benefit from continuing the relationship and whether termination would be detrimental to

7

him.  Given the entire record, we cannot say that the juvenile court erred in finding that mother failed to sustain her burden of establishing the parental-benefit exception, or that it abused its discretion in terminating parental rights.  This, ultimately, was the conclusion in *Caden C.*—that the juvenile court had not abused its discretion when it decided that the parental-benefit exception *applied*.  (*Id.* at p. 642.)  We likewise conclude that the court here did not abuse its discretion when it concluded that the exception did *not* apply.

III.
DISPOSITION

The order terminating parental rights is affirmed.

8

HUMES, P. J.


WE CONCUR:


MARGULIES, J.


SANCHEZ, J.


A163149
*In re T.P.*